Curia, per Evans, J.
By the Act of Congress, “ the records and judicial proceedings of the Courts of any State shall be proved and admitted in any other Court within the United States, by the attestation of the clerk and the seal of *34 the Court annexed, if there be a seal, together with a certifi- ^ cate of the Judge, Chief Justice, or Presiding Magistrate, ' as the case may be, that the attestation is in due form.” The evidence offered in this case was a certificate of five persons, styling themselves Presiding Justices of the Inferior Court of Elbert County, where the judgment was rendered; -and the question is, whether this certificate is in accordance with the Act of Congress. By reference to the Laws of Georgia, it appears that inferior Courts are to be held twice a year in each county, by the Justices of the said Court, or a majority of them ; that the Justices of the Inferior Courts are elected by the people every four years, and until successors are elected and qualified ; and, in all cases brought in the Superior Courts, where either of the Judges thereof shall be a party, or interested therein, it shall be the duly of three or more of the Justices of the Inferior Court to preside at the same. By these Acts, I do not perceive that any provision is made for the appointment of any person who comes within the words of the Act of Congress, “Judge, Chief Justice, or Presiding Magistrate.” All in rank seem to be on an equality, and all would seem to be what they style themselves in the certificate, Presiding Justices of the Court. It is manifest the Act of Congress was framed in reference to a judicial organization which does not prevail in all the States. The Act would seem to contemplate a Court where there was but one Judge, or a Court of several, with a head, designated as Chief Justice or Presiding Magistrate. Our own organization cannot be brought literally within this description, and great difficulties were encountered in the case of Stephenson v. Bannester, in giving in evidence a record of this State in the Courts of Kentucky. Indeed, it would seem, according to that case, that no such certificate could be given by any Judge of this State as could be received in evidence under the Act of Congress. Bul I suppose this literal interpretation has not been generally given ; for, although we have no Judge of any particular district, or Chief Justice, or Presiding Magistrate, we are daily in the habit of giving certificates, as a Presiding Judge, in turn, of the Court, for the district where the judgment is rendered.
The Act of Congress was intended to designate the manner in which the records and judicial proceedings of one State should be evidence in another; and, as the organization of the Courts in some of the States is different from that contemplated by the Act, it must receive such liberal construction as will be conformable to the manifest intention. By the Laws of Georgia, there is no one answering the description of Judge, Chief Justice, or Presiding Magistrate of the Inferior Courts : so far as I can discover, they preside in the Couit on a footing of perfect equality. It is more than *35 likely, that, whilst the Court is in session, there may be, for convenience and the facilitating of business, some head, through whom the judgments of the Courts are pronounced, but the law has made no provision for the appointment of any such officer, and, as only a majority is required to be present, such head may be constantly fluctuating, or may have no existence beyond -the temporary occasion for which he was appointed. He cannot be designated as either the Judge, Chief Justice, or presiding Magistrate of the Court. There was, then, no alternative, but that the certificate should be signed by all, styling themselves Presiding Magistrates, as by law they really were. And this Court is of opinion that was a compliance with the Act of Congress.
The other question involved in the case is, as to the effect of the judgment rendered in Georgia. The proceedings in the case were commenced by what is usually called a foreign attachment. It is now well understood that an attachment is a proceeding in rem, by which the defendant is not bound, except as to the property attached. To make a judgment conclusive between the parties, the Court must have jurisdiction of the person of the defendant, which can only be service of process on him, or some other notice. By the Laws of Georgia, the property attached may be restored to the defendant on his giving security in double the debt or demand, or the defendant may file his defence to the action, as if the property attached had been replevied. By an Act passed in 1836, “Judgments in Attachment shall bind no other property than that attached, nor shall the person or property of the defendant, other than that attached, be liable, unless the defendant shall come in terms of law,- and be made a party to such attachment.” In this case, the defendant did appear by attorney, and filed his pleas to the plaintiff’s action. It seems to have been held, in New York, where the garnishee, under the provision of an Act of Laws of Connecticut, where the attachment issued, pleaded to. the action, that did not convert the action into a proceeding in personam. The reason why, in attachment, the defendant is not personally bound is, that he has had no notice of the action, and no opportunity of' making his defence. But if, as this defendant did, he voluntarily came in and made his defence on the merits of the case, the action ceases to be in rem, and becomes an action in personam. Such seems to have been the understanding of the Georgia Court, for both the judgment and execution are as if the action had been in personam. This Court is of opinion that the decision of the Circuit Court was right on all the points made in the case, and the appeal is dismissed.
Wardlaw, Frost and Withers, JJ. concurred.

Motion refused.